IN THE

TENTH COURT OF APPEALS




 
 
 
 
 
 
 


 



Nos. 10-05-00272-CR,
10-05-00273-CR,

& 10-05-00281-CR

 

Jacqueline Erin Tucker,

                                                                      Appellant

 v.

 

The State of Texas,

                                                                      Appellee

 

 

 



From the Criminal District Court
No. 2

Tarrant County, Texas

Trial Court Nos. 0901803A, 0901805A
& 0901817A

 



MEMORANDUM  Opinion



 








          Jacqueline Erin Tucker appeals the
denial of her suppression motion in her prosecution for possession of three
different controlled substances.  Tucker contends in her sole issue that the
affidavit presented to the magistrate for a search warrant in her case did not
provide sufficient chronological information to supply probable cause that
controlled substances would be found at her residence.  We will affirm.

Under Illinois v. Gates, “the traditional
standard for review of an issuing magistrate’s probable cause determination has
been that so long as the magistrate had a ‘substantial basis for . . . conclud[ing]’
that a search would uncover evidence of wrongdoing, the Fourth Amendment
requires no more.”  462 U.S. 213, 236, 103 S. Ct. 2317, 2331, 76 L. Ed. 2d 527
(1983) (quoting Jones v. United States, 362 U.S. 257, 271, 80 S. Ct. 725, 736, 4 L. Ed. 2d 697 (1960)); accord Swearingen v. State, 143 S.W.3d 808,
810 (Tex. Crim. App. 2004).

Tucker cites the familiar Guzman v. State
for the proposition that we conduct a de novo review on the question of
probable cause, presumably because there are no credibility issues arising from
the face of the affidavit.  955 S.W.2d 85, 89 (Tex. Crim. App. 1997).  However,
the Court of Criminal Appeals recently clarified that Guzman articulates
only a general principle for determining when such issues should be reviewed de
novo and when deference should be given to the lower court’s ruling.  See
Swearingen, 143 S.W.3d at 811.  The Court explained that, under Gates
and as an exception to the general principle articulated in Guzman, an
appellate court is required to give deference to a magistrate’s determination
that probable cause exists for a search warrant and not conduct a de novo
review of that determination.  Id.; accord Ornelas v. United States, 517 U.S. 690, 698-99, 116 S. Ct. 1657, 1663, 134 L. Ed. 2d 911 (1996).

An appellate court examines only the four
corners of an affidavit to determine whether probable cause exists for a search
warrant.  Massey v. State, 933 S.W.2d 141, 148 (Tex. Crim. App. 1996); State
v. Stone, 137 S.W.3d 167, 175 (Tex. App.—Houston [1st Dist.] 2004, pet.
ref’d); Morris v. State, 62 S.W.3d 817, 821 (Tex. App.—Waco 2001, no
pet.). Though we are limited to the facts contained in the affidavit,
the affidavit must be interpreted in a common sense and realistic manner.  Lagrone
v. State, 742 S.W.2d 659, 661 (Tex. Crim. App. 1987); Stone, 137
S.W.3d at 175; Morris, 62 S.W.3d at 823.  Thus, reasonable inferences
may be drawn from the facts set forth in the affidavit, and the determination
of whether the affidavit provides probable cause is made by examining the
totality of the circumstances.  Ramos v. State, 934 S.W.2d 358, 362-63 (Tex.
Crim. App. 1996); Stone, 137 S.W.3d at 175; Morris, 62 S.W.3d at
823.

To provide probable cause for a search warrant,
the facts submitted must be sufficient to justify a conclusion that the object
of the search is probably on the premises to be searched at the time the
warrant issues.  Ramos, 934 S.W.2d at 363; Stone, 137 S.W.3d at
175; Morris, 62 S.W.3d at 821-22.  On the specific issue of the amount
of chronological information necessary to provide probable cause for a search
warrant, we “examine, in light of the type of criminal activity involved, the
time elapsing between the occurrence of the events set out in the affidavit and
the time the search warrant was issued.  When the affidavit recites facts
indicating activity of a protracted and continuous nature, the passage of time
becomes less significant.”  Stone, 137 S.W.3d at 178 (citation omitted);
accord Morris, 62 S.W.3d at 823.

Here, the affidavit recites in pertinent part:

In the last forty-eight hours, your Affiant was
contacted by a credible and reliable confidential informant (CI) who has
provided investigators of MNICU-NE with information leading to the seizure of
narcotics in the past.  The CI advised that he/she knew of a subject by the
name of Jacqueline Tucker, who lives in a house at [Tucker’s address] who is
selling methamphetamine.  The CI advised that he/she could go to the residence
at this time and purchase an amount of methamphetamine from Jacqueline Tucker.

 

Investigator Huski and your affiant met with the
CI at a predetermined location.  The CI was searched as was his/her vehicle and
no methamphetamine or related contraband was located.  Your affiant gave the CI
a quantity of government funds to buy an amount of methamphetamine for
evidentiary purposes.  Investigator Huski and your affiant then followed the CI
to [Tucker’s address].  We observed the CI enter the residence by walking up
the stairs to the front porch.  The CI stayed inside for about twenty minutes
at which time we observed him/her exit the residence.

 

We met with the CI at a predetermined location. 
The CI handed me a container containing a crystallized powder substance.  The
substance had the appearance of crystallized methamphetamine.  The substance
when tested using a presumptive test for methamphetamine, tested positive for
methamphetamine.  The substance was taken out of the container and weighed. 
The substance was found to weigh .40 grams.  The CI was searched as was his/her
vehicle and no narcotics or related contraband was located.

 

The CI advised your affiant that he/she knocked
on the door, which was answered by Tucker.  The CI asked her if she had any
speed, and she said she did and handed him/her a container, which held a
crystallized rock substance.  The CI then left and met with investigators.

 

The CI advised that Tucker has installed two or
three cameras that monitor the front door area of the house, as well as the
front yard and down to the street.  .  .  .  The CI advised that Tucker spends
a lot of time in the office and closely monitors the cameras, so that she can
observe anyone coming to her residence.  Furthermore, Tucker typically keeps a
shotgun in the living room, leaning against the wall.  .  .  .  The CI also
advised that Tucker keeps a handgun in the office, which is commonly kept
unconcealed and accessible to anyone in the office.

 

The magistrate issued the search warrant within
minutes after the affidavit was signed.

          The CI told the primary investigator
(the affiant) that Tucker was selling methamphetamine from her home.  During
the 48-hour period immediately preceding issuance of the warrant, the CI
carried out a controlled buy and purchased .40 grams of methamphetamine from
Tucker.  The CI’s statement that Tucker “is selling methamphetamine”
together with Tucker’s installation of video cameras and deployment of weapons
indicates “activity of a protracted and continuous nature.”  See Stone,
137 S.W.3d at 178; Morris, 62 S.W.3d at 823.

          Therefore, under the totality of the
circumstances, the facts stated in the affidavit gave the magistrate a “substantial
basis for . . . [concluding]” that methamphetamine would be found at Tucker’s
residence.  See Gates, 462 U.S. at 236, 103 S. Ct. at 2331; Swearingen,
143 S.W.3d at 810.  Thus, the affidavit contained sufficient facts to provide
probable cause for issuance of the search warrant.  See Patterson v. State,
138 S.W.3d 643, 648 (Tex. App.—Dallas 2004, no pet.); Blake v. State,
125 S.W.3d 717, 725 (Tex. App.—Houston [1st Dist.] 2003, no pet.); White v.
State, 932 S.W.2d 593, 595-96 (Tex. App.—Tyler 1995, pet. ref’d).

Accordingly, we overrule Tucker’s sole issue and
affirm the judgment in each case.

 

FELIPE REYNA

Justice

Before Chief Justice
Gray,

Justice
Vance, and

Justice
Reyna

Affirmed

Opinion delivered and
filed October 4, 2006

Do not publish

[CR25]






erruled.
          Point 4 asserts the prosecutor committed prosecutorial misconduct by attempting to
impeach defense witness Sonnier through questions asking if someone else testified differently,
would they be lying, when no such evidence had been presented.
          Appellant contends that the cross examination of defense witness Sonnier was improper
because the prosecutor made reference to a statement Appellant's girlfriend may have made about
how Sonnier came in contact with the police. The prosecutor did not state that the girlfriend made
such a statement but asked Sonnier whether such a statement would be true.
          Great latitude is allowed to show a witness's bias or motive. Carillo v. State, (Tex. Crim.
App.) 591 S.W.2d 876. The trial judge has discretion over the extent to which a witness may be
cross examined. Carillo, supra, p. 885, 886. We think the prosecutor's questioning was proper. 
Assuming, without deciding, that such was improper, the questions were harmless. The issue of
how Sonnier came in contact with the police was a minor issue. Sonnier's testimony was put in
serious question because of his prior inconsistent statement and not because of how he was led to
the police. We say that, beyond a reasonable doubt, the error, if any, made no contribution to
Appellant's conviction or punishment. Tex. R. App. P. 81(b)(2). Point 4 is overruled.
          The judgment is affirmed.
 
                                                                                 FRANK G. McDONALD
                                                                                 Chief Justice (Retired)

Before Justice Cummings,
          Justice Vance and 
          Chief Justice McDonald (Retired)
Affirmed
Opinion delivered and filed January 27, 1993
Do not publish